UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



___

UNITED STATES OF AMERICA

-vs-

RUBEN HOLTON,
        Defendant

DECISION and ORDER

14-CR-6161-CJS-MWP-1
17-CV-6228 CJS

___

APPEARANCES

For Defendant:      Ruben Holton, *Pro se*
                          23758-055
                          Allenwood Low Federal Correctional Institution
                          P.O. Box 1000
                          White Deer, Pennsylvania 17887

For the United States:      Charles E. Moynihan
                          Office of the United States Attorney
                          100 State Street
                          Room 620
                          Rochester, New York 14614

INTRODUCTION

Now before the Court is Ruben Holton's ("Defendant" or "Holton") *pro se* application to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The application is denied.

BACKGROUND

This action arose from incidents that occurred on the night of August 23, 2014,

and the early morning of August 24, 2014, in the City of Rochester, New York. On those dates, Defendant and his former girlfriend, Maquia Bedell ("Bedell"), resided at 270 Magnolia Street. Bedell initially called 911 and reported that Defendant had "placed his hands on her" during an argument. Bedell stated that she did not want Defendant arrested, but wanted help from police to remove her daughter from the home. Officers came to the scene and assisted Bedell in removing her daughter from the home. However, several hours later, Bedell again called police and reported that Defendant had twice choked her, by placing his hands around her neck and squeezing. When police arrived, they observed abrasions on Bedell's neck, which they photographed. Bedell completed a sworn statement regarding the choking and demanded that the officers arrest Defendant. Bedell opened the door to the house and directed the officers to an upstairs bedroom, where Defendant was sleeping. The officers arrested Defendant inside the bedroom, where they observed a loaded shotgun in plain view, leaning against a wall. After the officers placed Defendant into a patrol car, he reportedly made a spontaneous statement that he had purchased the shotgun on Joseph Avenue in 2010, and that his motive in buying the weapon had been to protect his family.

At the time of his arrest, Defendant was on parole for a felony DWI conviction, and had three prior drug felony convictions. In particular, Defendant had previously been convicted, under the New York Penal Law, of Attempted Criminal Sale of a Controlled Substance in the Third Degree, a Class C Felony, in 1997;[1] Criminal Possession of

---

[1] While "criminal sale of controlled substance in the third degree is a class B felony," New York Penal Law

2

Controlled Substance in the Third Degree, a Class B Felony, in 2001; and Criminal Possession of a Controlled Substance in the Third Degree, a Class B Felony, in 2007.

On October 7, 2014, a federal grand jury returned a two-count sealed indictment against Defendant. The first count of the indictment charged Defendant with being an Armed Career Criminal in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § § 922(g)(1) & 924(e). The second count of the indictment was a forfeiture provision, relating to a shotgun and ammunition.

On February 5, 2015, Defendant's counsel filed an omnibus motion [#15] that included a request to suppress the shotgun and Defendant's statement to police. Particularly with regard to the seizure of the shotgun, Defendant asserted that he had not given consent for the officers to enter the residence, and that he had not witnessed anyone else give such consent. The Government maintained, however, that Bedell had given consent to the officers. Subsequently, Defendant indicated to the Honorable Marian W. Payson, United States Magistrate Judge, that he expected that if Bedell were to testify at a suppression hearing, she would deny that she had given permission for the officers to enter the residence.[2]

On December 14, 2015, a suppression hearing was held, at which Ms. Bedell

---

§ 220.39, the attempted criminal sale of a controlled substance in the third degree is a class C felony. *See,* New York Penal Law § 110.05(4) ("An attempt to commit a crime is a: ... 4. Class C felony when the crime attempted is a Class B felony;"); *see also, United States v. King,* 325 F.3d 110, 114 (2d Cir. 2003) ("An attempt to commit a Class B felony is a Class C felony, see N.Y. Penal Law § 110.05(4).")
[2] Docket No. [#36].

3

testified. As Defendant expected, Bedell indicated that she did not *expressly* tell the officers that they could enter or search the house. However, upon cross examination, Bedell admitted that she called the officers to 270 Magnolia Street with the understanding and expectation that the officers would go inside and arrest Defendant for choking her.[3] Indeed, Bedell admitted that she had demanded that the officers go into the house and arrest Defendant.[4] Bedell also acknowledged that she had "basically" given the officers permission to go upstairs to Defendant's room, since when they asked her where Defendant was, she pointed up the stairs. See, Docket No. [#40] at p. 18 ("I pointed upstairs, so yes. Basically, I gave them permission."). After Bedell finished testifying, Magistrate Judge Payson gave the parties an opportunity to make further submissions and reserved her decision.

However, on March 2, 2016, Defendant's counsel informed Magistrate Judge Payson that the parties believed they had worked out a resolution of the case, and that they were awaiting final approval from the U.S. Attorney's Office. Defendant therefore requested, and was granted, several adjournments of the deadline for filing post-suppression-hearing memorandums. (Docket Nos. [#51]-[#55]). Ultimately, Magistrate Judge Payson never issued a ruling on the suppression motion, since the parties entered

---

[3] Docket No. [#40] at p. 28, 29-30, 32, 33; see also, Docket No. [#41] at p. 78 (Arresting officer testified that Bedell told the officers that she wanted Defendant arrested and out of her house, whereupon she unlocked and opened the front door, the stepped back and looked at them to enter); id. at 147 ("[S]he did say she wanted us to go into the house and arrest him.").

[4] Bedell agreed that she had given police a sworn statement indicating that Defendant had choked her, and that the officers had taken pictures of abrasions on her neck, that had been caused by Defendant.

into a plea agreement.

On July 28, 2016, the parties appeared before the undersigned for Defendant's plea. However, the Court adjourned that appearance to allow Defendant additional time to review the Plea Agreement with his attorney. (Docket No. [#57]).

On August 11, 2016, the parties again appeared before the undersigned, at which time Defendant waived indictment and pled guilty to a superseding two-count information [#61][#62] charging him, in the first count, with conspiracy to unlawfully possess a firearm in violation of 18 U.S.C. § § 922(g)(1) and 371, and, in the second count, with possession of a firearm in a school zone in violation of 18 U.S.C. § § 922(q)(2)(A) and 924(a)(4). The two counts each carried a maximum sentence of imprisonment of five years, with any sentence under the second count to be served consecutive to the sentence under the firs count.

The plea was pursuant to a Plea Agreement [#63] under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure and called for Defendant to receive a sentence consisting principally of ten years (120 months) in prison. To put this number in context, if Defendant had been convicted as an Armed Career Criminal in Possession of a Firearm and Ammunition in violation of 18 U.S.C. § § 922(g)(1) & 924(e), as he was originally charged under Count 1 of the Indictment, he would have faced a mandatory minimum sentence of fifteen years.[5]

---

[5] *See,* 18 U.S.C. § 924(e)(1) ("In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be

In the Plea Agreement, the parties agreed, pursuant to Sentencing Guideline § 1B1.2(a), that Defendant's sentencing range under the advisory sentencing guidelines would "be determined as if [he] was convicted of a violation of [18 U.S.C. § ] 922(g)(1), and subject to the enhanced sentencing for this offense provided for in [the Armed Career Criminal Act ("ACCA"),18 U.S.C. § ] 924(e)."[6] In that regard, Defendant agreed that because of his three prior drug felony convictions, he was an Armed Career Criminal under Guideline § 4B1.4(b)(3)(B), with a base offense level of 33.[7] However, the Plea Agreement called for Defendant to receive a three-level downward adjustment for acceptance of responsibility, resulting in an offense level of 30. The Plea Agreement further recited that Defendant had a criminal history category of VI. The application of this offense level (30) and criminal history category (VI) resulted in a sentence range of 168-210 months. However, that calculation was trumped by the *statutory maximum* of 120 months. Accordingly, the Plea Agreement indicated that Defendant's sentencing range under the advisory guidelines was 120 months.[8]

The Plea Agreement also contained a waiver provision, in which Defendant agreed that he was waiving his right to appeal or collaterally attack any sentence of 120 months or less.

During the plea colloquy, Defendant acknowledged to the Court that he had

---

fined under this title and imprisoned not less than fifteen years[.]"); *see also,* Docket No. [#93-1] at p. 13.

[6] Plea Agreement [#63] at p. 6.

[7] Plea Agreement [#63] at p. 7.

[8] Plea Agreement [#63] at p. 8.

6

reviewed the Plea Agreement with his attorney; that he had read and understood the Plea Agreement; that he had received enough time to review the Plea Agreement; and that he was satisfied with his attorney's advice and representation. With regard to his guilt, Defendant admitted that despite being a thrice-convicted felon, he had conspired to purchase the subject shotgun on Joseph Avenue in the City of Rochester and had possessed the shotgun and ammunition at his home, which was located within a school zone.

Defendant expressly stated that he understood he was agreeing to give up his right to appeal or collaterally attack his sentence as long as he received the agreed-upon sentence of 120 months.[9] Defendant further expressly acknowledged that he was not required to plead guilty, and that he understood he had the right to challenge the Government's evidence and proceed to trial. Defendant nevertheless indicated that he believed that it was in his best interest to plead guilty.[10]

During the plea, Defendant asked the Court about the reference in the Plea Agreement to a criminal history category VI, since he believed that he was a category IV. In response to that question, the Court and Defendant's attorney had a discussion on the record, wherein Defendant's counsel essentially explained that while Defendant's criminal history would ordinarily be IV, it became VI because the sentencing range was being calculated as if Defendant was an Armed Career Criminal.[11] Additionally, the Court

---

[9] Docket No. [#93-1] at pp. 34-35.
[10] Docket No. [#93-1] at p. 5.
[11] Docket No. [#93-1] at p. 30.

7

explained to Defendant that even if the criminal history category was IV and not VI, such fact would be irrelevant to the agreed-upon sentence, since he was agreeing to a sentence of 120 months, which was less than the guideline range that would result from using either category IV or category VI.[12]

During the plea colloquy, the Court remarked that Defendant appeared to have been very well counseled and prepared by his attorney,[13] and that he had asked the Court a number of very good questions. At the conclusion of the plea, the Court found, based upon its observations, that Defendant's plea had been knowing, intelligent and voluntary.

On November 8, 2016, Defendant appeared before the undersigned for sentencing, at which time the Court imposed a sentence consisting principally of the agreed-upon 120-month term of imprisonment. During the sentencing, the Court indicated that Defendant's criminal history category was IV, and not VI as had been stated in the Plea Agreement, but that such discrepancy had no impact on the sentence. The Court further advised Defendant that according to the Plea Agreement's waiver provision, he had waived his right to appeal or collaterally attack his sentence, since the Court had imposed the agreed-upon sentence of 120 months.

Nevertheless, on April 10, 2017, Defendant filed the subject collateral attack pursuant to 28 U.S.C. § 2255, purporting to assert the following four grounds: 1) he was

---

[12] Docket No. [#93-1] at pp. 30, 33.
[13] Docket No. [#93-1] at p. 45.

not an Armed Career Criminal because his 1997 conviction for Attempted Criminal Sale of a Controlled Substance in the Third Degree was not a "serious drug offense," since the maximum allowable term of imprisonment for that offense was less than ten years; 2) his attorney failed to pursue a particular strategy at the suppression hearing; 3) his criminal history category was incorrectly stated to be VI in the Plea Agreement, when it was actually IV; and 4) he "didn't agree that [he] would've qualified for ACCA had [he] been convicted of [18 U.S.C. § ] 922(g)(1)."

For the reasons discussed below, Defendant's arguments are barred by the Plea Agreement's Appeal/Collateral Attack Waiver provision and, and lack merit in any event.

## DISCUSSION

### Defendant's *Pro Se* Status

Since Defendant is proceeding *pro se*, the Court has construed his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

### Section 2255 Principles

Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). The Court may dismiss a section 2255 petition without conducting a hearing if the petition and the record "conclusively show" that the defendant is not

entitled to relief. 28 U.S.C. § 2255(b). Here, the Court finds that a full evidentiary hearing is not required because there are no material factual disputes and the record conclusively shows that Defendant is not entitled to relief.

Collateral Attack Waiver

Defendant's Plea Agreement contains a waiver of his right to appeal or collaterally attack any sentence imposed by the Court which included a term of imprisonment of 120 months or less. The Court sentenced Defendant to the agreed-upon term of 120 months. Accordingly, the waiver bars this motion unless some exception applies.

"Typically, a waiver of appellate or collateral attack rights does not foreclose an attack on the validity of the process by which the waiver has been procured, such as the plea agreement, including an ineffective assistance claim." *U.S. v. Cleveland*, No. 14-4389-cr, 643 F.App'x 66, 67 (2d Cir. Mar. 17, 2016) (*citing Frederick v. Warden, Lewisburg Corr. Facility*, 308 F.3d 192, 195 (2d Cir.2002); internal quotation marks omitted). To establish ineffective assistance of counsel generally, a defendant

> must make two showings. First, he must demonstrate that his counsel's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) [("Strickland")]. Second, he must establish that he suffered prejudice—in this context, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052.

*Fulton v. Graham*, 802 F.3d 257, 265 (2d Cir. 2015). The Second Circuit has stated that, "[t]o raise a claim despite a guilty plea or appeal waiver, the petitioner must show that the plea agreement was not knowing and voluntary, *because the advice he received from*

10

*counsel was not within acceptable standards."* Parisi v. U.S., 529 F.3d 134, 138 (2d Cir. 2008) (emphasis added, citations omitted).

Here, Defendant has not even addressed the waiver provision. In that regard, as discussed earlier, during his plea colloquy, Defendant expressly acknowledged the waiver provision and admitted to understanding that he was giving up the right to file an appeal or collateral attack if he received a sentence of 120 months. Despite that, the subject § 2255 motion contains no reference to the waiver provision. Moreover, Defendant did not file a reply to the Government's response, which argued that the subject motion is barred by the waiver provision. Consequently, Defendant has not attempted to make any argument for why the waiver provision should not apply.

Moreover, even liberally construing Defendant's application to raise claims of ineffective assistance of counsel, such claims fail to suggest that Defendant's decision to enter into the "plea agreement was not knowing and voluntary because the advice he received from counsel was not within acceptable standards." *United States v. Ritter*, 700 F. App'x 10, 11 (2d Cir. 2017) (citation and internal quotation marks omitted), as corrected (Aug. 9, 2017). That is, none of Defendant's claims establish any ineffectiveness by Defendant's attorney affecting the process by which Defendant pled guilty.

Defendant first asserts that his 1997 conviction was not a "serious drug offense" within the meaning of 18 U.S.C. § 924(e)(2)(A)(2) since the maximum allowable term of imprisonment for that offense was less than ten years. On this point, Defendant asserts that Attempted Criminal Sale of a Controlled Substance in the Third Degree "is a Class C felony in New York and is punishable [by] only 5 ½ years maximum for a first time felony

offender, which I was in 1997." Defendant's statement about a maximum sentence of 5 ½ years is apparently a reference to New York Penal Law § 70.70(2)(a)(ii), which *currently* states in pertinent part that a sentence of imprisonment for a felony drug offender convicted of a class C felony "shall be at least one year and shall not exceed five and one-half years."

However, Defendant's argument on this point is incorrect. The statute upon which Defendant relies did not exist when he was sentenced in 1997. Rather, it was enacted in 2004, and became effective on January 13, 2005. *See*, 2004 Sess. Law News of N.Y. Ch. 738 (A. 11895, S. 7802) (McKinney's). At the time of Defendant's conviction and sentencing in 1997, the maximum sentence for Attempted Criminal Sale of a Controlled Substance in the Third Degree, a C felony, was fifteen years. *See, e.g., Aiken v. United States*, No. 06 CR 479 JFK, 2013 WL 4457372, at *4 (S.D.N.Y. Aug. 20, 2013) ("Criminal sale of a controlled substance in the third degree is a class B felony in New York, *see* N.Y. Penal Law § 110.05(4), and attempt of a class B felony constitutes a class C felony, *see id.* § 220.39. At the time of Aiken's sentencing in New York state court [in 1997], a class C felony was punishable by a term of up to fifteen years. *See id.* § 70.00(2)(c) (1996).").

For purposes of determining whether a conviction qualifies as a "serious drug offense" under ACCA, a court must look at state law as it existed at the time of the conviction. *See, Rivera v. United States*, 716 F.3d 685, 688–89 (2d Cir. 2013) ("Whether a prior conviction qualifies as a predicate felony for the ACCA sentencing enhancement is determined by looking to state law existing at the time of that conviction. For example,

a drug offense is only a "serious drug offense" under ACCA if the "'maximum term of imprisonment' applicable to a defendant's previous drug offense" was ten years or more when he was convicted for that offense.") (citations omitted).

Since the maximum sentence for Defendant's 1997 conviction was fifteen years,[14] the conviction was for a "serious drug offense" within the meaning of 18 U.S.C. § 924(e)(2)(A)(2). *See, United States v. Wallace*, 937 F.3d 130, 143 (2d Cir. 2019) ("Wallace's 1999 conviction, which at the time was punishable by up to 15 years of imprisonment, thus qualifies as a "serious drug offense[.]").[15] Consequently, Defendant's first argument lacks merit.

Related to that first argument, the fourth argument in Defendant's § 2255 motion asserts that he "didn't agree that [he] would've qualified to ACCA had [he] been convicted of [18 U.S.C. § ] 922(g)(1)." However, that argument is also incorrect, since Defendant

---

[14] *See, Rivera v. United States*, 716 F.3d at 686 ("One of the state court convictions that resulted in Rivera's sentencing enhancement pursuant to ACCA was an October 2000 conviction for attempted criminal sale of a controlled substance in the third degree, in violation of New York State Penal Law §§ 110 and 220.39. This was a class C felony, subject at the time to a maximum term of imprisonment of fifteen years.").

[15] The Court is aware that at least one district court has held that a drug offense for which the statutory maximum was subsequently reduced below ten years would not qualify as a "serious drug offense" under ACCA, where the defendant was eligible to be re-sentenced under the new state law. *See, U.S. v. Cabello*, --- F.Supp.3d ---, 2019 WL 5558057 (E.D.N.Y. May 31, 2019); *see also, U.S. v. Wallace*, 937 F.3d at 143 (discussing same issue, but declining to decide question since even under amended state law the defendant's maximum potential sentence was greater than ten years). Here, there is no indication that Holton was similarly eligible for re-sentencing under the amended state law, since he was convicted of a C felony. *See, U.S. v. Cabello*, 2019 WL 5558057 at *3, n. 5 (Observing that while class B felonies are eligible for resentencing under New York's Drug Law Reform Act, class C felonies are not.)

13

twice expressly agreed to that in the Plea Agreement. See, Plea Agreement at p. 6, ¶ 6 ("The government and the defendant agree that the defendant's sentencing range for imprisonment and a fine shall be determined as if the defendant was convicted of a violation of Title 18, United States Code, Section 922(g)(1), and subject to the enhanced sentencing for this offense provided for in Title 18, United States Code, Section 924(e) [(ACCA)]."); see also, id. at p. 7, ¶ 7 ("[I]t is the understanding of the government and the defendant that the defendant is an Armed Career Criminal."). The fact that Defendant agreed to this in the Plea Agreement does not suggest any ineffectiveness by Defendant's counsel, since Defendant did in fact qualify as an Armed Career Criminal, based on his three prior drug felony convictions.

The third argument in the § 2255 motion is that the Plea Agreement incorrectly recited that Defendant's criminal history category was VI, when it was actually IV. However, even if that assertion is correct, the Court has already explained that such fact is irrelevant in this case. Indeed, as discussed above, Defendant was aware of this discrepancy when he entered his plea. The question of Defendant's criminal history was discussed at both the plea and sentencing. Ultimately, the Court determined at sentencing that the correct number was IV. The Court nevertheless reiterated that regardless of whether the criminal history category was IV or VI, Defendant had agreed to a sentence of 120 months, which was less than the guideline range that would result from using either category IV or category VI.[16] Accordingly, this claim also fails to

---

[16] Docket No. [#93-1] at pp. 30, 33.

suggest any ineffectiveness by Defendant's counsel.

Finally, Defendant's second claim in the § 2255 motion asserts that his "lawyer didn't argue grounds that could have benefit[ed Defendant] at [the] suppression hearing and persuaded [him] to stop [the] hearing." Defendant expanded on this claim by stating:

> My lawyer never questioned a witness that was supposed to testify in my behalf at the suppression hearing why she said she gave police permission to go into the residence when her affidavit she signed is to the contrary. Even after I asked him to. Furthermore, he told me that he worked for the presiding magistrate judge and that she wasn't going to suppress the gun.

Docket No. [#74] at p. 4. In this regard, Defendant is evidently referring to the fact that Ms. Bedell stated in an affidavit that she had not expressly given police permission to enter the house, while at the hearing she indicated that she had nevertheless "basically" given such consent to the officers, since she had demanded that they arrest Defendant, and had opened the door and directed them to where Defendant was sleeping. Defendant contends that his attorney should have attempted to impeach Bedell with her prior written statement.

Preliminarily, it is doubtful whether this alleged error by Defendant's counsel, concerning a pre-plea matter (suppression), involves the "process" by which Defendant pled guilty. See, e.g., Oehne v. United States, No. 3:14-CV-00044 (JCH), 2016 WL 10721817, at *11 (D. Conn. Oct. 20, 2016) ("The Second Circuit has made very clear that pre-plea events unrelated to "the process by which [a defendant]" agreed to plead guilty will be barred by a waiver of appeal and collateral attack rights like the one Oehne signed in this case. Parisi, 529 F.3d at 138. There is no question that the court's denial of Oehne's

15

Motion to Suppress "changed [the defendant's] strategic bargaining position pre-plea," but that fact is insufficient to overcome the waiver of collateral attack rights made by Oehne in the plea agreement. *Id.* Because this ineffective assistance of counsel claim does not concern the advice Oehne received from defense counsel with respect to the decision to plead, *see id.*, this claim is barred by the waiver of appeal and collateral attack rights contained in Oehne's plea agreement.").

In any event, Defendant has not shown that his attorney was ineffective at the suppression hearing. Even assuming that the alleged prior inconsistent statement by Bedell actually exists, which Defendant has not shown, it would not actually be inconsistent with Bedell's testimony at the hearing, and defense counsel's tactical decision not to use such prior statement to impeach Bedell does not suggest ineffectiveness. To the contrary, defense counsel zealously and ably represented Defendant at the suppression hearing.[17] In any event, Defendant was not prejudiced by anything that happened at the suppression hearing, since Magistrate Judge Payson never issued a ruling. As already discussed, Defendant obviated the need for such a ruling when he made the knowing, intelligent and voluntary decision to plead guilty, rather than to continue challenging the Government's evidence.

---

[17]Defendant's statement about defense counsel having previously worked for the "presiding magistrate" is apparently a reference to the fact that his attorney, Assistant Federal Public Defender Jeffrey Ciccone, previously worked as a law clerk for Magistrate Judge Payson. However, even if Mr. Ciccone expressed the opinion that Magistrate Judge Payson would likely not grant the suppression motion, such statement was not improper and provides no evidence of ineffective assistance.

16

For all of the foregoing reasons, Defendant's application pursuant to § 2255 is both barred by the Plea Agreement's waiver provision and lacking in merit. Accordingly, the application is denied.

## CONCLUSION

Defendant's application [#74] under 28 U.S.C. § 2255 is denied. The Clerk of the Court is directed to close this case. Pursuant to 28 U.S.C. § 2253, the Court declines to issue a certificate of appealability, since Defendant has not made a substantial showing of the denial of a constitutional right. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

So Ordered.

Dated:   Rochester, New York
         November 15, 2019

ENTER:

_____
CHARLES J. SIRAGUSA
United States District Judge